FILED
3-11-08  NR
MAR 1 1 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **08CR 206** |
| | ) | |
| v. | ) | |
| | ) | Violations: Title 18, United States Code, |
| STEVEN STURDIVANT and | ) | Sections 152(3), 157(1), and 1343. |
| YASMEEN STURDIVANT, a/k/a | ) | |
| "Yasmeen Kahn" | ) | |

JUDGE KENNELLY
MAGISTRATE JUDGE DENLOW

### COUNT ONE

The SPECIAL FEBRUARY 2008-1 GRAND JURY charges:

1. At times material to this Indictment:

   (a) Defendants STEVEN STURDIVANT and YASMEEN STURDIVANT, also known as "Yasmeen Kahn," were husband and wife. The defendants bought and leased real estate in the Northern District of Illinois. Among the properties that the defendants purchased were:

   i. Properties that they used as their personal residences, which were located at 15332 Greenwood, Dolton, Illinois (the "Greenwood property") and 23820 Sara Court, Crete, Illinois (the "Sara Court property") (collectively, the "Residential Properties"); and

   ii. Properties that they leased for rental income, which were located at 6444 South Dorchester, Chicago, Illinois (the "Dorchester property") and 7415-7423 South Kimbark, Chicago, Illinois (the "Kimbark property") (collectively, the "Rental Properties").

   (b) Alliance Funding, Bayview Loan Servicing, CitiFinancial, Direct Mortgage Partners, Eagle Mortgage & Consultants, Green Point Mortgage, GMAC Mortgage, Interbay Funding, and Northstar Financial Group (collectively, the "Lenders") were mortgage companies engaged in the business of issuing mortgage loans for the purchase of residential property.

   (c) Among the information that the Lenders used to determine whether to issue a

loan for the purchase of real estate was the loan applicant's income, assets, debts, and liabilities, as well as the purchase price, the loan amount, and the down payment made by the loan applicant.

2. From in or about 1996 and continuing through at least on or about March 31, 2006, in Chicago, Crete, and Dolton, in the Northern District of Illinois, Eastern Division, and elsewhere,

STEVEN STURDIVANT and
YASMEEN STURDIVANT,
also known as "Yasmeen Kahn,"

defendants herein, together with others known and unknown to the Grand Jury, devised and intended to devise, and participated in, a scheme to defraud the Lenders, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, as further alleged herein.

3. It was part of the scheme that defendants STEVEN STURDIVANT and YASMEEN STURDIVANT fraudulently obtained over $2.4 million in mortgage loans from the Lenders by intentionally misrepresenting to the Lenders their income, assets, debts, and liabilities, as well as the purchase prices for the properties and the down payments the defendants provided to the sellers of the Residential Properties and Rental Properties.

4. It was further part of the scheme that defendants STEVEN STURDIVANT and YASMEEN STURDIVANT sought loans from the Lenders for the purchase of the Residential Properties and Rental Properties, intending not to repay those loans in full.

5. It was further part of the scheme that defendants STEVEN STURDIVANT and YASMEEN STURDIVANT intentionally falsified their employment income on loan application forms in order to make it falsely appear to the Lenders that the defendants had sufficient income to qualify for the loans they sought for the Residential Properties and Rental Properties.

2

6. It was further part of the scheme that defendants STEVEN STURDIVANT and YASMEEN STURDIVANT intentionally provided false and altered tax returns to the Lenders in an attempt to substantiate their fraudulent representations regarding their employment income.

7. It was further part of the scheme that defendants STEVEN STURDIVANT and YASMEEN STURDIVANT fraudulently inflated the purchase prices of the Rental Properties to the Lenders in order to increase the amounts of money the defendants could borrow from the Lenders relating to these properties.

8. It was further part of the scheme that defendants STEVEN STURDIVANT and YASMEEN STURDIVANT falsely represented to the Lenders that they had provided certain funds as down payments to the sellers of the Residential Properties and Rental Properties when, as they well knew, they had not provided down payments of those amounts to the sellers of those properties.

9. It was further part of the scheme that defendants STEVEN STURDIVANT and YASMEEN STURDIVANT knowingly submitted to the Lenders altered checks that falsely reflected that they had used those checks to make down payments to the sellers of the Residential Properties and Rental Properties when, as they well knew, they had not provided the checks to the sellers as down payments.

10. It was further part of the scheme that defendants STEVEN STURDIVANT and YASMEEN STURDIVANT intentionally overstated to the Lenders the amounts of rental income that the Rental Properties were generating in order to falsely show the Lenders that they had enough rental income to justify the loans they were seeking on the Rental Properties.

11. It was further part of the scheme that the defendants STEVEN STURDIVANT and YASMEEN STURDIVANT intentionally overstated their assets to the Lenders on loan application

forms for the Residential Properties by providing false information about their bank balances.

12. It was further part of the scheme that defendants STEVEN STURDIVANT and YASMEEN STURDIVANT gave instructions to agents of the closing companies as to how the loan proceeds from the properties should be disbursed at the closings. At the direction of STEVEN STURDIVANT and YASMEEN STURDIVANT, the closing agents issued the following checks to the defendants:

(a) A check for approximately $54,188 at the closing of the purchase of the Dorchester property on or about March 13, 1998, for a "first mortgage" on the Dorchester property. Defendants STEVEN STURDIVANT and YASMEEN STURDIVANT directed the check to be made payable to "Yasmeen Kahn" to disguise the fact that defendants were the true recipients of the check. As defendants STEVEN STURDIVANT and YASMEEN STURDIVANT well knew, neither "Yasmeen Kahn," YASMEEN STURDIVANT, nor STEVEN STURDIVANT held a first mortgage on the property.

(b) Two checks totaling approximately $90,000 at the closing of the purchase of the Kimbark property on or about December 23, 1998 for "earnest money." Defendants STEVEN STURDIVANT and YASMEEN STURDIVANT directed one check to be made payable to "Yasmeen Kahn" to disguise the fact that defendants were the true recipients of the check. As defendants STEVEN STURDIVANT and YASMEEN STURDIVANT well knew, neither "Yasmeen Kahn," YASMEEN STURDIVANT, nor STEVEN STURDIVANT had provided and were entitled to payments for "earnest money" of $90,000.

13. It was further part of the scheme that when defendants STEVEN STURDIVANT and YASMEEN STURDIVANT learned of attempts by the Lenders to collect past due payments and

foreclose on the Residential Properties and Rental Properties, the defendants stalled those collection efforts by acquiring refinancing by providing new lenders with false information by filing multiple bankruptcy actions.

14. It was further part of the scheme that when they refinanced their mortgage loans, defendants STEVEN STURDIVANT and YASMEEN STURDIVANT acquired the refinancing in amounts greater than the amounts owed to the previous lenders so that the defendants could personally receive proceeds from the refinancing.

15. It was further part of the scheme that defendants YASMEEN STURDIVANT and STEVEN STURDIVANT conducted a sham sale of the Dorchester property to Individual A on or about February 1, 2005. At closing, defendants used the proceeds from the sham sale to pay off their past-due mortgage and caused themselves to personally receive approximately $78,978. Despite this purported sale to Individual A, defendant YASMEEN STURDIVANT continued to collect rent from the tenants in the Dorchester property.

16. It was further part of the scheme that after the Lenders filed claims on the Rental Properties based on the defendants' failure to pay loans in defendant STEVEN STURDIVANT's name, STEVEN STURDIVANT quit-claimed those properties to defendant YASMEEN STURDIVANT in an attempt to frustrate the Lenders' attempts to collect the mortgage payments due and owed to them by the defendants.

17. It was further part of the scheme that defendants STEVEN STURDIVANT and YASMEEN STURDIVANT misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence, purposes, and acts done in furtherance of the aforementioned scheme.

18. As a result of the scheme, defendants STEVEN STURDIVANT and YASMEEN STURDIVANT fraudulently obtained approximately $2.4 million in mortgage loans to which they were not entitled.

19. On or about July 20, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

> STEVEN STURDIVANT and
> YASMEEN STURDIVANT,
> also known as "Yasmeen Kahn,"

defendants herein, for the purpose of executing the aforesaid scheme to defraud, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, a wire transfer of approximately $343,630 from Fremont Investment and Loan in Brea, California, to LaSalle Bank in Chicago, Illinois, which funds were used to pay the seller of the Sara Court property;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 18 of Count One of this indictment are hereby realleged and incorporated as if fully set forth herein.

2. On or about July 20, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

> STEVEN STURDIVANT and
> YASMEEN STURDIVANT,
> also known as "Yasmeen Kahn,"

defendants herein, for the purpose of executing the aforesaid scheme to defraud, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, a wire transfer of approximately $18,928 from Fremont Investment and Loan in Brea, California, to LaSalle Bank in Chicago, Illinois, which funds were used to pay the seller of the Sara Court property;

In violation of Title 18, United States Code, Section 1343.

## **COUNT THREE**

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations in paragraph 1 through 18 of Count One of this indictment are hereby realleged and incorporated as if fully set forth herein.

2. On or about April 3, 2006, at Chicago, in the Northern District of Illinois, Eastern Division,

> YASMEEN STURDIVANT,
> also known as "Yasmeen Kahn,"

defendant herein, for the purpose of executing the aforesaid scheme to defraud, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, a wire transfer of approximately $713,264 from LaSalle Bank in Chicago, Illinois, to Wachovia Bank, N.A., in Coconut Grove, Florida, which funds were used to pay off a delinquent mortgage loan the defendants owed to Bayview Loan Servicing on the Kimbark property;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations in paragraph 1(a) of Count One of this indictment are hereby realleged and incorporated as if fully set forth herein.

2. At times material to this indictment:

   (a) A debtor initiated a bankruptcy case by filing a petition in the Bankruptcy Court.

   (b) Chapter 13 of the United States Bankruptcy Code (Title 11 of the United States Code) provided persons (debtors) who were unable to pay their debts with the opportunity to repay them over a period of time.

   (c) The filing of a bankruptcy petition automatically stayed all collection activities by creditors against the debtor or his property and caused the clerk of the Bankruptcy Court to mail notice of the automatic stay to all creditors.

   (d) The Bankruptcy Code required a debtor to file, under penalty of perjury, a statement of financial affairs, schedules of assets, liabilities, income and expenses, and a plan of reorganization.

   (e) Based on the aforementioned filings, the Bankruptcy Court approved a plan of repayment for the debtor to repay his debts over a period of time, taking into account the debtor's amount of debt, assets, and income.

   (f) On or about May 11, 1998, defendant STEVEN STURDIVANT obtained a $140,500 mortgage from a secured creditor on the Greenwood property. STEVEN STURDIVANT stopped making payments on the mortgage loan and the lender filed foreclosure proceedings in or about November 1999.

(g) On or about March 13, 1998, defendant STEVEN STURDIVANT obtained an $82,500 mortgage loan from a secured creditor on the Dorchester property. STEVEN STURDIVANT stopped making payments on the mortgage loan and the lender filed a claim on the property on or about May 29, 2002.

(h) On or about December 23, 1998, defendant STEVEN STURDIVANT obtained a $287,000 mortgage loan from a secured creditor on the Kimbark property. STEVEN STURDIVANT stopped making payments on the mortgage loan and the lender filed a claim on the property prior to June 26, 2002.

(i) On or about June 26, 2002, defendant STEVEN STURDIVANT obtained a $484,000 mortgage loan from a secured creditor on the Kimbark property. STEVEN STURDIVANT stopped making payments on the mortgage loan and the lender filed a claim on the property on or about October 1, 2003.

3. Beginning on or about December 9, 1999, and continuing through on or about May 27, 2005, at Chicago, in the Northern District of Illinois, Eastern Division,

STEVEN STURDIVANT,

defendant herein, devised and intended to devise a scheme to defraud his creditors, and others, which scheme is further described below.

4. It was part of the scheme that defendant STEVEN STURDIVANT intended to and did delay and prevent his creditors from foreclosing upon the properties by filing and causing to be filed the following Chapter 13 bankruptcy petitions for the sole purpose of invoking the automatic stay and with no intention of complying with the requirements of the Bankruptcy Code:

(a) On or about December 9, 1999, defendant STEVEN STURDIVANT filed and caused to be filed a Chapter 13 bankruptcy petition, which initiated bankruptcy case 99-37878 ("Bankruptcy Case #1").

(b) On or about July 14, 2000, after Bankruptcy Case #1 was dismissed because defendant STEVEN STURDIVANT was delinquent on his scheduled payments, defendant STEVEN STURDIVANT filed and caused to be filed a second Chapter 13 bankruptcy petition, which initiated bankruptcy case 00-20511 ("Bankruptcy Case #2").

(c) On or about December 6, 2000, after Bankruptcy Case #2 was dismissed because defendant STEVEN STURDIVANT was delinquent on his scheduled payments, defendant STEVEN STURDIVANT filed and caused to be filed a third Chapter 13 bankruptcy petition, which initiated bankruptcy case 00-35703 ("Bankruptcy Case #3").

(d) On or about September 11, 2003, after Bankruptcy Case #3 was dismissed because defendant STEVEN STURDIVANT was delinquent on his scheduled payments, defendant STEVEN STURDIVANT filed and caused to be filed a fourth Chapter 13 bankruptcy petition, which initiated bankruptcy case 03-37459 ("Bankruptcy Case #4").

(e) On or about August 19, 2004, after Bankruptcy Case #4 was dismissed because defendant STEVEN STURDIVANT was delinquent on his scheduled payments, defendant STEVEN STURDIVANT filed and caused to be filed a fifth Chapter 13 bankruptcy petition, which initiated bankruptcy case 04-30891 ("Bankruptcy Case #5").

(f) On or about May 27, 2005, after Bankruptcy Case #5 was dismissed because defendant understated his debts, defendant STEVEN STURDIVANT filed and caused to be filed a sixth bankruptcy petition, under Chapter 7, which initiated bankruptcy case 05-21465 ("Bankruptcy Case

#6").

5. It was further part of the scheme that STEVEN STURDIVANT overstated his income in bankruptcy filings so that it appeared that he had sufficient income to make him eligible for Chapter 13 bankruptcy protection when, as defendant STEVEN STURDIVANT well knew, his income was significantly less than he stated.

6. It was further part of the scheme that defendant STEVEN STURDIVANT misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence, purposes, and acts done in furtherance of the aforementioned scheme.

7. On or about August 19, 2004, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

STEVEN STURDIVANT,

defendant herein, for the purpose of executing the aforesaid scheme to defraud and attempting to do so, filed and caused to be filed, a petition for bankruptcy under Title 11, United States Code (the Bankruptcy Code), in *In re Steven Sturdivant*, case number 04-30891, in the United States Bankruptcy Court for the Northern District of Illinois;

In violation of Title 18, United States Code, Sections 157(1).

## COUNT FIVE

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations in paragraph 1(a) of Count One and paragraph 2(a) through (e) of Count Four of this indictment are hereby realleged and incorporated as if fully set forth herein.

2. On or about September 11, 2003, at Chicago, in the Northern District of Illinois, Eastern Division,

STEVEN STURDIVANT,

defendant herein, knowingly and fraudulently made a materially false declaration, certificate, verification, and statement under penalty of perjury, in and in relation to a Chapter 13 bankruptcy case, specifically case 03-37459, *In re Steven Sturdivant*, in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, in that, in the section of the Petition requiring the debtor to state his gross business income for the previous twelve months, defendant STEVEN STURDIVANT falsely stated that his gross business income for the previous twelve months was approximately $186,000 when, in fact, as defendant STEVEN STURDIVANT well knew, his gross business income for the previous twelve months was substantially less than $186,000;

In violation of Title 18, United States Code, Section 152(3).

## COUNT SIX

The SPECIAL FEBRUARY 2008-1 GRAND JURY further charges:

1. The allegations in paragraph 1(a) of Count One and paragraph 2(a) through (e) of Count Four of this indictment are hereby realleged and incorporated as if fully set forth herein.

2. On or about August 19, 2004, at Chicago, in the Northern District of Illinois, Eastern Division,

STEVEN STURDIVANT,

defendant herein, knowingly and fraudulently made a materially false declaration, certificate, verification, and statement under penalty of perjury, in and in relation to a Chapter 13 bankruptcy case, specifically case 04-30891, *In re Steven Sturdivant*, in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, in that, in the section of the Petition requiring the debtor to state his gross business income for the previous twelve months, defendant STEVEN STURDIVANT falsely stated that his gross business income for the previous twelve months was approximately $186,000 when, in fact, as defendant STEVEN STURDIVANT well knew, his gross business income for the previous twelve months was substantially less than $186,000;

In violation of Title 18, United States Code, Section 152(3).

A TRUE BILL:

_____
FOREPERSON

_____
PATRICK J. FITZGERALD
United States Attorney